IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00224-MSK-MJW

SCOTT FIRTH,

    Plaintiff,

v.

JONI SHOEMAKER, individually, and in her official capacity as Deputy Director of Clinical
    Services,
PEGGY HEIL, individually, and in her official capacity as Chief of Rehabilitation Programs,
JOE STOMMEL, individually, and in his official capacity as Chief of Rehabilitation Programs,
BURL MCCULLAR, individually, and in his official capacity as Sex Offender Treatment
    Program Manager,
SAMUEL DUNLAP, individually, and in his official capacity as SOTMP Phase II Program
    Coordinator,
CHRISTINE TYLER, individually, and in her official capacity as SOTMP Therapist,
DWIGHT MARTINEZ, individually, and in his official capacity as SOTMP Therapist,
PAT MOSHURE, individually, and in her official capacity as SOTMP Therapist,
JACULYN MAUS, individually, and in her official capacity as SOTMP Therapist,
LENNY WOODSON, individually, and in his official capacity as SOTMP Therapist, and
TINA VALDEZ, individually, and in her official capacity as SOTMP Therapist,

    Defendants.

_____

## OPINION AND ORDER GRANTING, IN PART, MOTION TO DISMISS
## AND DENYING MOTION FOR PRELIMINARY INJUNCTION

_____

    **THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss

**(# 24)**, and Mr. Firth's response **(# 27)**; and Mr. Firth's Objections **(# 35)** to the Magistrate

Judge's September 25, 2009 Recommendation **(# 33)** that his Motion for Preliminary Injunction

**(# 29)** be denied.

**FACTS**

A meaningful recitation of the facts in this case is complicated by the *pro se* Plaintiff

dedicating the bulk of his Complaint (**# 3**) to legal argument, rather than describing factual

circumstances supporting his claims. Sifting the operative factual material from the

argumentative and conclusory aspects of the Complaint, the Court understands the facts as

follows.

In March 2003, Mr. Firth pled guilty in state court to a charge of Sexual Assault on a

Child by One in a Position of Trust, a class 4 felony. C.R.S. § 18-3.405.3(1), (3). He was

sentenced to a term of probation of 10 years to life. A condition of this probation apparently

involved ongoing sex offender treatment. In March 2004, authorities moved to revoke Mr.

Firth's probation, citing him for unlawful possession of a knife and for violations of the terms of

his sex offender treatment.[1] The trial court revoked probation and sentenced him to a term of six

---

[1] The Complaint makes passing references to these circumstances, but does not elaborate.
*See Docket* # 3 at p. 16 (document's page numbering). A published decision concerning the
revocation of Mr. Firth's probation, *People v. Firth*, 205 P.3d 445, 448 (Colo. App. 2008),
describes the circumstances in greater detail.

Treatment providers became concerned about Mr. Firth's "lack of empathy for his victim
and his marginal recognition of his own responsibility." In addition, the supervising probation
officer became concerned when Mr. Firth "disclosed fantasies about handcuffing a young girl
whom he had seen in his apartment building and self-reported an incident where he got into his
car to follow an attractive jogger." As a result, the probation officer arranged to have Mr. Firth's
treatment transferred from Archuletta County to a provider in Denver "where he would be
subject to a higher level of containment and monitoring." Mr. Firth, apparently unhappy with
the transfer of his supervision away from the local treatment program, exhibited less success in
the Denver program. In February 2004, he was terminated from the program "due to his
unwillingness to engage in the treatment program in a meaningful way." The failure to complete
sex offender treatment constituted a violation of probation. (A second ground for revoking
probation – the presence of a "skinning knife" found in Mr. Firth's car – was cited by the
probation officer but eventually rejected by the trial court as a ground for revoking probation.)
*Id.*

The Court notes that Mr. Firth disputed (and presumably, continues to dispute) most of

years to life in the Colorado Department of Corrections ("CDOC"). The maximum life sentence in sex offender cases is mandatory in accordance with the terms of the 1998 Colorado Sex Offender Lifetime Supervision Act ("the 1998 Act"), C.R.S. § 18-1.3-1002 *et seq.*

Mr. Firth became concerned about his ability to obtain parole once he became eligible at the conclusion of his minimum sentence term. C.R.S. § 18-1.3.1006 provides that, in determining whether to release a sex offender on parole, the Parole Board "shall determine whether the sex offender has successfully progressed in treatment." In this case, Mr. Firth alleges generally that he has intermittently been deprived of the opportunity to participate in CDOC's Sex Offender Treatment and Monitoring Program ("SOTMP"). He contends that, during the periods he was permitted to participate in SOTMP, he was arbitrarily placed "on probation in treatment" – ostensibly for failing to "recognize and acknowledge problem areas," for failing to "take responsibility for thoughts, feelings, and behavior," and for "minimizing" (*i.e.* failing to accept full responsibility for his thoughts and actions). On at least two occasions, Mr. Firth was terminated from a SOTMP assignment, effectively denying him the opportunity to obtain parole, at least until he could re-enroll in and complete the SOTMP program.

From these facts, Mr. Firth nominally alleges four claims under 42 U.S.C. § 1983, but contained within those four claims are a galaxy of independent causes of action. As best the Court can determine, Mr. Firth contends: (i) that the failure to provide him with SOTMP treatment that any inmate[2] can successfully complete constitutes a violation of his Due Process

the foregoing facts and challenged the revocation of his probation thorough a C.R.C.P. 35 proceeding, albeit unsuccessfully.

[2]Specifically, Mr. Firth contends that the Defendants have not designed or implemented "a system of treatment which is capable of making Plaintiff (or anyone else) a candidate for parole." He supports this contention by referring to CDOC statistics that show that from 2003 -

rights, a claim this Court construes to invoke both substantive and procedural rights; (ii) conditioning parole eligibility on completion of SOTMP for inmates sentenced after the 1998 Act, while inmate sentenced for sex offenses prior to the 1998 Act are able to obtain parole without completing SOTMP, constitutes a violation of the Equal Protection clause; (iii) the conditioning of parole eligibility on successful completion of SOTMP – completion which Mr. Firth apparently alleges is impossible – effectively converts Mr. Firth's indeterminate sentence to one of life without parole, a sentence he contends is so disproportionate to his offense as to violate the Eighth Amendment's ban on cruel and unusual punishment; (iv) conditioning parole eligibility on completion of the (allegedly impossible to complete SOTMP) "retroactively increased Plaintiff's punishment to life in prison without parole," thus violating the U.S. Constitution's prohibition of *ex post facto* laws; (v) his expulsion from the SOTMP program on at least two occasions violated his procedural and substantive Due Process rights; (vi) the creation of a SOTMP program that limits the number of possible participants permits the Defendants to arbitrarily withhold treatment from him, thus violating his substantive Due Process rights; (vii) SOTMP criteria by which inmates are evaluated for successful progress – specifically, the notion of whether inmates are sufficiently "minimizing" – are incapable of objective measurement and are thus void for vagueness; (viii) treatment providers' insistence

---

2007, 738 inmates with sex offender characteristics were considered for parole, but only 4 were actually granted parole.

       That being said, it is unclear what particular characteristics of the current SOTMP Mr. Firth contends render it impossible for him, much less any inmate, to successfully complete the existing program. His response to the instant motion suggests a somewhat conspiratorial belief that the true purpose of the program is simply to aid SOTMP providers in interrogating offenders in order to support additional criminal charges, after which all pretense of treatment is abandoned.

that Mr. Firth admit to particular acts upon which his probation was revoked violated his Fifth Amendment right against self-incrimination because he was appealing the sufficiency of the grounds for that revocation; (ix) the 1998 Act, which requires an indeterminate sentence with a maximum life term be imposed on sex offenders, violates the U.S. Constitution's substantive Due Process clause in that it indulges a presumption of danger to the public and denies offenders the opportunity to be heard as to whether a sentence short of life imprisonment should be imposed; (x) the 1998 Act is also unconstitutional in that it deprives sex offenders of the right to a jury trial and/or procedural Due Process in sentencing; (xi) C.R.S. § 18-1.3-1006, the parole statute, violates the U.S. Constitution's Due Process clause "by failing to provide an adequate continuing opportunity to be heard on the issue of release after sentence has been imposed"; (xii) the 1998 Act violates the Equal Protection clause by imposing a mandatory maximum sentence, regardless of the circumstances of the offense, and punishes sex offenders more severely than non-sex offenders (who are not subject to such mandatory maximum sentences); (xiii) the 1998 Act violates the Eighth Amendment, in that the life sentences it mandates are imposed only for one other, far more severe crime – first degree murder; and (xiv) the delegation of the judicial power to impose sentences to the Parole Board to decide when sex offenders should be released violates the separation of powers doctrine of Article III of the Colorado Constitution. Mr. Firth requests that the Court afford a range of relief, including declaratory and injunctive relief, as well as a monetary award "for each day that his incarceration has been arbitrarily continued from December 17, 2008," the first date he was otherwise eligible for parole, along with punitive damages.

The Defendants move **(# 24)** to dismiss the Complaint in its entirety. The Court will not

independently summarize the various arguments contained in the Defendants' motion for several reasons. Most significantly, because the Court has construed Mr. Firth's Complaint liberally, the specific arguments raised by the Defendants do not always meet, head-on, the claims this Court has construed to exist in the Complaint.[3] Moreover, those arguments are discussed in sufficient detail in the course of the analysis below.

While briefing on the Defendants' motion to dismiss was proceeding, Mr. Firth moved **(#29)** for a preliminary injunction. Specifically, he requested that the Court restrain the Defendants from placing on of probationary status in SOTMP and "to cease and desist from pressuring him to confess to issues relevant to this case." He argues that, if forced to confess to thoughts and actions inconsistent with SOTMP objectives, "his confession would be used to defeat . . . his criminal case thereby causing [him] irrevocable harm," but if he does not confess, "he may be terminated from [SOTMP] leaving him ineligible for parole . . . until he does confess and is re-admitted to treatment." He asserts that being removed from SOTMP will result in him being reassigned to the general prison population which "subjects him to violence from other inmates up to and including death." The Court referred the motion to the Magistrate Judge, and on September 25, 2009, the Magistrate Judge denied **(# 33)** the motion. The Magistrate Judge found that Mr. Firth "failed to show in his moving papers that he has a substantial likelihood of success on the merits and he has further failed to demonstrate in his moving papers that he will suffer irreparable injury," but did not explicate his findings and reasoning further.

---

[3]Rather than strictly construing the arguments in Defendants' motion, thereby punishing the Defendants for interpreting the dense, lengthy Complaint differently than this Court has, the Court will analyze the general arguments in the Defendants' motion as they might reasonably correspond to the claims this Court has construed to exist.

Mr. Firth filed timely Objections **(# 35)** to the Recommendation under Fed. R. Civ. P. 72(a). Specifically, he objects to: (i) the Magistrate Judge's finding that Mr. Firth was complaining about being pressured into admitting violations of the Code of Penal Discipline, when no such allegations were made in the motion; (ii) that he believes he will prevail on appeal with his challenge to the factual sufficiency of the allegations used to revoke his probation, and thus, is likely to succeed on the merits of his claims herein; (iii) that he is "already suffering from irreparable injury" as he has been terminated from SOTMP treatment and is thus ineligible for parole; and (iv) that the requested injunction is consistent with the *status quo* and would not harm the public interest.

## ANALYSIS

### A.  Standard of review

 In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Two recent decisions from the Supreme Court have clarified the analysis that the Court undertakes when reviewing a pleading under Rule 12(b)(6) standards. First, although "detailed

factual allegations" are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must have sufficient factual assertions "to raise a right to relief above the speculative level." *Id.* Second, because a court is "not bound to accept as true a legal conclusion couched as a factual allegation," it must first identify and disregard averments that "are no more than conclusions [which] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A court then examines the remaining, well-pled factual allegations, assuming their veracity, and determine whether they plausibly give rise to an entitlement to relief. *Id.*

The Court is mindful of the Plaintiff's *pro se* status and construes his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve the Plaintiff of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

For purposes of efficiency and clarity, the Court chooses to address the claims raised by Mr. Firth and the arguments of the Defendants in a different order than either has presented in their papers.

### B. *Heck v. Humphrey* issues

The Court first finds that a number of Mr. Firth's claims, most notably those that challenge the constitutionality of the 1998 Act, cannot be maintained in a § 1983 action.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) explains that an inmate's claim for money damages under § 1983 cannot be maintained where success on the inmate's claims would necessarily imply the invalidity of the inmate's conviction or sentence.[4]  Instead, the inmate must directly attack the conviction or sentence by means of a *habeas corpus* proceeding and obtain its vacatur before any suit for damages under § 1983 may lie.  Although *Heck* focused solely on claims for money damages, subsequent decisions have extended its reach to encompass claims for injunctive and other equitable relief where such relief implicates the validity of the inmate's conviction.  *See e.g. Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005).  .

Here, the Court finds that several of Mr. Firth's claims implicate the validity of his conviction or sentence, and thus, are barred by *Heck*.  All of his claims that challenge the constitutionality of the 1998 Act,[5] by definition, contend that his sentence was imposed in violation of the Constitution.  Similarly, Mr. Firth's claims that the duration of his sentence violates the Eighth Amendment's cruel and unusual punishment prohibition, as well as his claim that the sentence violates the ban on *ex post facto* laws also implicate the validity of his sentence. The crux of these claims is that while Mr. Firth's permissible indeterminate sentence of six years to life became a determinate sentence of life without parole as the result of the unavailability of

---

[4]Inexplicably, the Defendants' motion on this point cites *Preiser v. Rodriguez*, 411 U.S. 475, 499-500 (1973), a case on which *Heck* heavily relies, but makes no reference whatsoever to the more recent and more on-point *Heck* decision.

[5]These would be claims (ix), (x), (xii), and (xiii) articulated above.

meaningful SOTMP programs, and it is that life sentence that violates the constitutional restrictions. Once again, if Mr. Firth is correct that the maximum life sentence imposed upon him is invalid, the Court can grant relief on this issue only in the context of a *habeas* proceeding. Accordingly, the claims listed above at (iii), (iv), (ix), (x), (xii), and (xiii) are dismissed without prejudice to being pursued in a *habeas* proceeding.

### C. Procedural Due Process claims

The Court understands Mr. Firth to assert several different procedural Due Process claims. As denoted above, he asserts in claim (i) that the failure of the Defendants to provide a meaningful SOTMP program constitutes a procedural Due Process violation, and he asserts in claim (v) that his termination from the SOTMP on two occasions occurred without procedural Due Process.

The Defendants interpret Mr. Firth's claim that CDOC fails to provide a meaningful SOTMP program - by this the Court understands him to mean that CDOC fails to provide a SOTMP program that inmates can expect to complete before the expiration of their minimum sentence.[6] At page 8 of his Complaint, Mr. Firth explains that "the purpose of the legislation is to ensure that offenders are treated so that they can be released without extending their incarceration." *Docket* # 3 at 8 (emphasis added). He makes several other statements in this portion of the Complaint that lead the Court to understand that his allegation is that the SOTMP program is not designed to be completed within the term of his minimum sentence: "the statutory scheme creates a cognizable liberty interest . . . in participation in treatment 'which gives

---

[6]Were the Court to take Mr. Firth's assertion that CDOC fails to provide a SOTMP program at face value, that claim would be conclusively disproved by the Complaint itself, which notes Mr. Firth's repeated participation in such a program.

offenders the opportunity to progress in treatment and be considered a candidate for parole within the time period of their minimum sentence'"; "[Defendants] have not designed, developed, or implemented a system of treatment which is capable of making Plaintiff (or anyone else) a candidate for parole by the time his minimum sentence has expired." *Id.* at 8, 9.

Mr. Firth's response to the motion seems to confirm that he intends his first procedural Due Process claim to turn on the extent to which SOTMP treatment can be completed before his minimum sentence expires. He asserts that "It is not disputed that [he] has asserted deprivation of a . . . liberty interest in appropriate and sufficient Sex Offender Treatment to enable his release on parole within the time of his minimum sentence." *Docket* # 27 at 4. Most significantly, he states that "the key element of the liberty interest is sufficient treatment <u>to enable release within the certain term established by the court</u>." *Id.* at 10-11 (emphasis added). This suggests that his claim is, as the Defendants argue, one that attaches a liberty interest to the <u>timing</u> of SOTMP access – *i.e.* that it must be made available in such a way as to permit it to be completed prior to the expiration of an inmate's minimum sentence.

An essential element of any Due Process claim is that the plaintiff possessed a constitutionally-protected liberty or property interest in the thing that was denied to them. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir.2007). Thus, the question presented on this claim is whether Mr. Firth had a liberty interest in access to a SOTMP program that can be completed[7] before his minimum sentence expires.

---

[7]The Court is reluctant to narrowly construe Mr. Firth's contentions by focusing on the semantics of "completing" the SOTMP program versus "progressing" in it. Assuming Mr. Firth's claim (i) is a contention that the Defendants have failed to make available a SOTMP program in which an inmate such as Mr. Firth can make sufficient progress, so as to become parole eligible, prior to his minimum sentence expiration, the Court would nevertheless dismiss

The Court finds no such liberty interest exists. State law creates a liberty interest in access to a prison program when the law restricts a prison official's discretion to determine how that program will be accessed by an inmate; in other words, it is the lack of the prison official's discretion that creates an protected expectation in the inmate that the program will be accessed as directed by law. *See Brown v. Chandler*, 111 Fed.Appx. 972, 976 (10th Cir. 2004) (unpublished), *citing Canterino v. Wilson*, 869 F.2d 948, 953 (6th Cir. 1989); *accord Beebe*, 333 F.Supp.2d at 1016 ("while the statute does vest some degree of discretion in [CDOC], that discretion is not as to whether a sex offender should receive treatment; rather, it is as to what kind of treatment is appropriate"). Thus, the Court examines whether there is some statute, regulation, or other source of state law that purports to remove CDOC officials' discretion regarding the timing of SOTMP access for inmates with minimum sentence dates.

Mr. Firth's response appears to contend that several sources of law create an entitlement that SOTMP treatment be provided sufficiently in advance of a minimum sentence date. The first cited statute is C.R.S. § 16-11.7-105. That statute requires that "Each sex offender" sentenced after a certain date "shall be required . . . to undergo treatment to the extent appropriate . . . ." Nothing in the text of this statute dictates that such treatment be supplied in a way so as to permit its completion prior to an inmate's minimum release date. Similarly, C.R.S. § 18-1.3-1004(3), which simply directs that "Each sex offender sentenced [to an indeterminate sentence] shall be required as a part of the sentence to undergo treatment" as required by C.R.S. § 16-11.7-105. Once again, this statute contains no apparent requirement that such treatment be

---

the claim as insufficiently conclusory. But for allegations which this Court addresses in other claims (*see* Fifth Amendment and vagueness issues, *infra.*), Mr. Firth's Complaint identifies nothing specific about the SOTMP that makes it impossible for an inmate to achieve progress.

supplied in a way as to permit its completion prior to the expiration of a minimum sentence date.

C.R.S. § 18-1.3-1006(1)(a) discusses a sex offender's minimum sentence and treatment, but it does so in a way that diminishes, not strengthens, Mr. Firth's position. That statute states "On completion of the minimum period of incarceration specified in a sex offender's indeterminate sentence, . . . the parole board shall schedule a hearing to determine whether the sex offender may be released on parole." Among the factors considered by the parole board at this hearing are "whether the sex offender has successfully <u>progressed</u> in treatment," and whether safe release were possible "under appropriate [continuing] treatment and monitoring requirements." *Id.* (emphasis added). Far from suggesting that treatment must be <u>completed</u> before the minimum sentence expires in order to permit release on parole, this statute indicates that the parole determination inquires only whether treatment has sufficiently <u>progressed</u> – implying that an inmate may be granted parole despite not having completed SOTMP, so long as he is diligently working toward such completion. Indeed, the statute contemplates that release on parole can be conditioned upon the offender continuing SOTMP treatment while free on parole, further bolstering the conclusion that completion of SOTMP before the minimum sentence date is not required by Colorado law.

Similarly, Mr. Firth points to CDOC's own Administrative Regulations ("AR"s). Of particular interest is AR 700-19 which governs the SOTMP program. Once again, this document undercuts any contention by Mr. Firth that state law requires inmates to be provided an ability to complete SOTMP before reaching their minimum sentence date. Part IV(E)(1) of AR 700-19 addresses "Treatment Participation Requirements and Prioritization" and explains that "To the extent resources permit, offenders may be prioritized for treatment based upon, but not limited

to, sentence type, parole eligibility date, [and other factors]." That subsection proceeds to explain that "Due to limited resources, offenders should be placed in treatment according to the following guidelines in priority order," with offenders such as Mr. Firth (those with lifetime supervision sentences that are within four years of their parole eligibility date) as being the highest priority. However, the regulation also provides that "Offenders that have not had an opportunity to participate in treatment will have priority over an offender that has had an opportunity and did not take it." This latter category of offenders "may not be placed back upon a waiting list [for an available treatment slot] until a prescribed amount of time has passed."

Several facets of AR 700-19 indicate that CDOC officials enjoy considerable discretion in determining when an inmate is given access to SOTMP. Most importantly, it indicates that prison officials "may . . . prioritize" inmates for treatment based on a variety of factors, of which the inmate's parole eligibility date is but one. Depending on how prison officials balance the various factors, an inmate with an imminent parole eligibility date might be considered to be a lower priority than an inmate with a later parole date but with, for example, a more compelling behavioral record. Similarly, although the regulation offers guidance in prioritizing inmates, apparently placing inmates like Mr. Firth in the highest priority level,[8] the regulation does not contain any mandatory language that requires officials to provide these inmates access to SOTMP by a certain point in time. Moreover, the regulation repeatedly makes clear that "limited resources" are available for SOTMP programs, and that "waiting lists" will commonly prevent an inmate's immediate entry to the program, further diminishing any inmate's reasonable

---

[8] The Court emphasizes that AR 700-19 mentions that "offenders should" – not "must" – be prioritized according to the defined categories. Once again, the lack of mandatory language in the AR undercuts Mr. Firth's argument that the AR creates a particular liberty interest.

expectation that SOTMP access will be provided in sufficient time that the program can be completed before the inmate's minimum sentence date passes.[9]

Under these circumstances, to the extent Mr. Firth's procedural Due Process claim is premised on a contention that he enjoys a liberty interest in SOTMP access sufficiently in advance of his earliest parole eligibility date that he can complete the program by that date, the Court finds no source of state law that creates such a liberty interest. The procedural Due Process claim denominated as claim (i) above is therefore dismissed for failure to state a claim.

Mr. Firth asserts a second procedural Due Process claim, denominated by the Court above as claim (v). The Court understands this claim to assert that Mr. Firth was repeatedly terminated from the SOTMP without Due Process. The Defendants concede, for purposes of this motion, that Mr. Firth enjoys a protected liberty interest in his continued participation in SOTMP and that he cannot be terminated from the program without procedural Due Process. *Citing Beebe v. Heil*, 333 F.Supp.2d 1011, 1016 (D. Colo. 2004). Although the Complaint is vague and largely conclusory with regard to the circumstances of his termination(s) from SOTMP, the Defendants have not challenged the claim on those grounds. Thus, the Court finds Mr. Firth has adequately alleged a procedural Due Process claim regarding his termination(s) from the SOTMP, and this claim will proceed.

---

[9]Mr. Firth cites to AR 700-19(iv)(g), which states "[CDOC] shall provide treatment formats which give offenders the opportunity to progress in treatment and be considered a candidate for parole within the time period of their minimum sentence." Once again, the key word here is "progress." At best, this portion of the regulation creates a mandatory duty on CDOC officials to allow each inmate the opportunity to begin SOTMP treatment before the expiration of their minimum sentence, such that they can thereafter demonstrate "progress." The Complaint makes clear that Mr. Firth was admitted into the SOTMP on two occasions before his minimum sentence expired.

### C.  Substantive Due Process

The Court understands Mr. Firth to allege three substantive Due Process claims – claim (i), which the Court understands to be an assertion that the Defendants' decision not to promulgate a SOTMP program that can be completed before the conclusion of an inmate's minimum sentence is arbitrary and capricious; claim (v), which the Court understands to challenge the Defendants' decisions to deem him to be in violation of the terms of the SOTMP such that he was placed on probation and later terminated from the program; and claim (vi), which the Court understands to assert that the Defendants' decision to promulgate a SOTMP program that supplied only a limited number of available spaces arbitrarily deprived him of a protected liberty interest.

The first two claims parallel the procedural Due Process claim discussed above, and the same reasoning as to those claims applies with equal force here.  Mr. Firth has not shown that he has any protected liberty interest in a SOTMP program that can be completed before the expiration of his minimum sentence.  Rather, his interest extends only to the opportunity to begin such a program by that time.  Accordingly, the substantive Due Process claim embedded in claim (i) fails.  On the other hand, because Mr. Firth has a liberty interest in his continued participation in the SOTMP program, he can assert a viable substantive Due Process challenge to the sufficiency of the Defendants' reasons for terminating him from that program.  Thus, claim (i) is dismissed in its entirety for failure to state a claim, while claim (v) will proceed as both a substantive and procedural Due Process challenge to the decisions to terminate Mr. Firth's participation in the SOTMP.

Claim (vi) challenges the decision of the Defendants to limit Phase II of the SOTMP to

96 available spaces as being arbitrary. This claim suffers from several flaws. First, as discussed above, AR 700-19 makes clear that an inmate's ability to participate in SOTMP may be affected by limited resources, and that "waiting lists" may result when the number of inmates wishing to participate exceeds the resources available. Under these circumstances, it is clear that CDOC is vested with discretion as to how to allocate limited resources to the SOTMP program and, correspondingly, inmates have no liberty interest in unfettered access to that program. Moreover, the exhibits to the Complaint make clear that, notwithstanding the limited number of spaces for participation in Phase II of SOTMP, Mr. Firth was indeed participating in Phase II on both occasions when his SOTMP participation was terminated. Thus, he lacks standing to complain that access to Phase II of the program is arbitrarily limited. Accordingly, the substantive Due Process claim identified as claim (vi) is dismissed.

### D. Equal Protection claim

The Court understands Mr. Firth's claim (ii) to sound in Equal Protection, such that he (and all other similarly-situated sex offenders) is being treated differently than "other sex offenders not sentenced under the 1998 Act." *Docket* # 3 at 11. He contends that because inmates subject to the 1998 Act cannot complete SOTMP treatment, he is effectively ineligible for parole; meanwhile, inmates sentenced for sex offenses under the previous statutory scheme, which did not require SOTMP treatment as a precondition for the granting of parole, can obtain parole. *See Helm v. State of Colorado*, 2007 WL 322770 (D. Colo. Jan. 31, 2007) (unpublished) (describing differences between sentencing scheme of Colorado Sex Offenders Act of 1968, C.R.S. §. 18-1.3-901 *et seq.* and Colorado Sex Offender Lifetime Supervision Act of 1998, C.R.S. § 18-1.3-1001 *et seq.*)

To state an Equal Protection claim, a plaintiff must allege: (i) that similarly-situated individuals were treated differently; and (ii) either that the differential treatment was based on a suspect classification or fundamental right and not supported by a compelling governmental interest, or, if the differential treatment was not based on a suspect classification or fundamental right, the differential treatment was not justified by a rational connection to a legitimate state interest. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1047 (10th Cir. 2009). The Defendants contend that any differential treatment between pre-1998 and post-1998 sex offenders is not based on suspect classifications or fundamental rights, and thus, the question is simply whether the differential treatment is based on a legitimate governmental interest. Mr. Firth responds that a fundamental right is indeed burdened – his "fundamental right to liberty and to a parole eligibility date."

Mr. Firth misperceives what constitutes a "fundamental right" for Equal Protection purposes. The phrase refers to those particular rights, embodied in the U.S. Constitution, that the Supreme Court has recognized as having fundamental importance. *Oklahoma Educ. Assn. v. Alcoholic Beverage Laws Enforcement Comn.*, 889 F.3d 929, 932 (10th Cir. 1989). Such rights include rights to privacy in certain reproductive decisions, the right to interstate travel, the right to associate to advance political beliefs, and the right to vote. *Id.* Mr. Firth's reference that denial of SOTMP treatment implicates his fundamental right to "liberty" is simply a repetition of his contention that participation in SOTMP implicates a liberty interest for Due Process purposes. To the extent Mr. Firth is claiming to enjoy a particularized "right" in this case, he is claiming a right to effective sex offender treatment. Nothing in the Constitution can be read to guarantee to citizens such a right. *See id.* at 933, *citing San Antonio Independent School District*

*v. Rodriguez*, 411 U.S. 1, 33-34 (1973) (explaining that fundamental rights are those "explicitly or implicitly guaranteed by the Constitution").  Similarly, Mr. Firth points to no Constitutional source of any right to a "parole eligibility date" or even to release on parole in general. *See e.g. Crump v. Kansas*, 143 F.Supp.2d 1256, 1262 (D. Kan. 2001) ("plaintiff has no fundamental right to parole before the expiration of his sentence").

Accordingly, the Court examines the differential treatment of pre- and post-1998 sex offenders under the "rational basis" test.  Rational basis review is "highly deferential to state legislatures" and requires the Court to indulge "a strong presumption of validity" to state laws. *City of Herriman v. Bell,* 590 F.3d 1176, 1194 (10th Cir. 2010).  The Court looks to see whether there is "any reasonably conceivable state of facts" that could justify the differential treatment, and will only strike down the law if the state's classification "rests on grounds wholly irrelevant to the treatment of the state's objective." *Id.*  Under this highly deferential test, the rational basis behind Colorado's decision in 1998 to subject sex offenders to greater treatment requirements is self-evident.  In C.R.S. § 16-11.7-101, the Colorado legislature makes clear that it finds that "comprehensive evaluation, identification, treatment, and continued monitoring of sex offenders . . . is necessary in order to work toward the elimination of recidivism by such offenders."  Such comprehensive treatment was not a component of then-existing law governing sex offenders, *Helm, supra*, thus requiring the legislature to change the law to ensure that future sex offenders would receive the needed treatment.  One can hardly say that the legislature's 1998 determination that mandatory treatment for subsequent sex offenders was appropriate lacks a rational basis, and thus, the fact that offenders convicted after 1998 are subject to different treatment than those convicted prior to that legislative change cannot be said to violate the Equal

Protection clause.  Thus, as a matter of law, Mr. Firth's Equal Protection claim on this point fails and claim (vi) is dismissed.

### F.  Void for Vagueness

In claim (vii), Mr. Firth argues that the regulatory provisions governing the SOTMP are void for vagueness.  Specifically, he contends that the regulations of the CDOC's Sex Offender Management Board[10] ("SOMB"), which define the contours of the SOTMP, fail to provide meaningful guidance as to when inmates are sufficiently "minimizing" inappropriate thoughts and actions.  Because this regulation effectively gives SOTMP therapists unfettered discretion to deem an inmate compliant or non-compliant with SOTMP goals, Mr. Firth argues, it is void for vagueness.

The "void for vagueness" doctrine is a subset of the Due Process clause.  Criminal laws must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute.  *U.S. v. Lovern*, 590 F.3d 1095, 1103 (10th Cir. 2009).  Similarly, a penal statute must specify what is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement.  *Dias v. City and County of Denver*, 567 F.3d 1169, 1179 (10th Cir. 2009).  The doctrine also applies to administrative regulations, albeit regulatory enactments are subject to a different, arguably more lenient analysis.  *Brennan v. OSHRC*, 505 F.2d 869, 872 (10th Cir. 1974).  The Court assumes, without necessarily finding, that the SOMB guidelines attempt to regulate inmates' conduct by defining the type of behavior that will be considered adequate

---

[10]The Defendants cite to the regulations in question as being found at:
http://dcj.state.co.us/odvsom/sex_offender/SO_Pdfs/2008%20Adult%20Standards%2FINAL.pdf
These regulations are specifically referenced by Mr. Firth in his Complaint and are essential to his claim on this issue.  Thus, it is appropriate for the Court to review these regulations as part of a Rule 12(b)(6) analysis.  Notably, Mr. Firth does not register any objection to the Court considering the regulations found there.

progress in SOTMP.  *See e.g. Woodruff v. Dept. of Labor*, 954 F.2d 634, 642 (11th Cir. 1992)

(explaining that vagueness analysis applies only to enactments that attempt to regulate others'

conduct, not to guidelines intended to assist in interpreting terms in other enactments).

Mr. Firth's challenge to the regulations focuses on the term "minimizing."  *Docket* # 3 at

16 ("Defendants have not expressed how "minimizing" can be explicitly measured.  The criteria

do not define minimizing.")  Except in circumstances not present here, the Court evaluates a

"void for vagueness" challenge in light of the particular facts of the case at hand.  *Dias*, 567 F.3d

at 1179-80.  In doing so, the Court does not look at the allegedly vague word or phrase in

isolation, but considers it as part of a unified regulatory scheme, amplified and clarified by its

context.  *Hoffman Estates*, 455 U.S. at 504 (entire body of "administrative regulation will often

suffice to clarify a standard with an otherwise uncertain scope").[11]

SOMB's regulations do not expressly define the term "minimizing," but its meaning is

readily ascertainable from the context it which it is used.  Section 3.510 of the SOMB

Regulations discusses "Levels of Denial" that offenders might have regarding their actions.

Denial level 2 consists of offenders who "admit to some of the behavior involved in the

offense, but justify its occurrence or minimize its importance," among other things.  Section

4.110, which attempts to define "Criteria for Successful Progress" in treatment, explains that a

successful offender "does not project blame or minimize personal responsibility."  From these

contexts, it is clear that the term "minimizing" is not a term of art; rather, it carries its

commonly-understood definition – "to diminish" – and its significance is established by the

---

[11]*Hoffman Estates* involved economic regulation with civil penalties. Regulations that impose (or, arguably in this case, magnify) criminal penalties will necessarily tolerate somewhat less ambiguity.

words it modifies.  In the quotes above, an offender is "minimizing" when he fails to recognize the importance and consequences of his conduct or where the offender fails to acknowledge the proper extent of his personal responsibility for the conduct and its effects.  The term is not so vague that people of ordinary intelligence could not understand what actions it defines.

Similarly, while Mr. Firth is correct that there is no objective means to measure how much a person is "minimizing," that alone does not make the term so capable of arbitrary and discriminatory enforcement that the SOMB regulations can be deemed void.  The test for vagueness is not whether the terminology used is susceptible to different interpretations by different individuals attempting to enforce it.  Rather, a law is impermissibly vague only when it "fails to provide such minimal guidelines" that it allows enforcers to "pursue their personal predilections" without any constraints.  *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).  A vague law is one in which the enforcement is "completely subjective" and enforceable "at the whim of any officer."  *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 521 (8th Cir. 1999) (finding regulation requiring boats to go slowly through a "no-wake" zone was not unduly vague).  The Court cannot say that the concept of "minimization" is so ill-defined by the SOMB guidelines that it allows therapists to enforce that prohibition against Mr. Firth at their whim.  By definition, the ban on minimization relates to an offender's conduct or thoughts of a sexual nature; for example, the regulations would not permit a therapist to criticize an offender for minimizing his responsibility for an auto accident.  Moreover, while an offender and his therapist might disagree as to whether the offender's conduct impermissibly reflects efforts to minimize – just as a driver and police officer might disagree as to whether the driver's actions constituted "reckless driving" – that disagreement does not render the regulation void for vagueness.  *See e.g. Grayned v. City*

*of Rockford*, 408 U.S. 104, 110 (1972) ("because we are "condemned to the use of words, we can never expect mathematical certainty from our language"). Therapists who are called upon to assess an offender's minimization do so based on training and professional standards that govern the therapeutic relationship.  The professional judgment that a therapist must exercise in determining whether minimization is occurring is not so unfettered as to give the therapist unrestricted license to declare an offender guilty of minimizing on the therapist's whim. Because the regulations as a whole provide some guidance to those providers in determining what sorts of behavior – *i.e.* behavior which diminishes the importance of inappropriate sexual thoughts or conduct – are subject to sanction, Mr. Firth's void for vagueness challenge fails to state a claim as a matter of law.  Thus, claim (vii) is subject to dismissal.

### F.  Fifth Amendment

In claim (viii), Mr. Firth argues that SOTMP regulations violate his Fifth Amendment rights, in that it is impossible for him to comply with the requirements of the program that he admit the details of his past conduct (or, more accurately, admit that the more ominous version of events described by his treatment providers is correct) when he is currently litigating a Rule 35 challenge to the trial court's factual findings that the nature of that conduct was sufficient to warrant revocation of his probation.

This claim is troubling for a number of reasons. Most importantly, Mr. Firth's response to the Defendants' motion so blurs the contours of the claim as to essentially render it moot.  Mr. Firth explains that "the issue is not a failure to admit anything. . .  Plaintiff has willingly disclosed every possible detail of events which led to the probation revocation," and that "Plaintiff did not invoke his Fifth Amendment right."  *Docket* # 27 at 31-32.  In other words, he

does not appear to contend that the Defendants ever punished him for invoking his constitutional rights, as would befit the classic conception of a Fifth Amendment claim.

Rather, Mr. Firth explains that this claim is that "Defendants have imposed compulsion that Plaintiff either divulge 'God only knows what' or he will not receive a Recommendation for release on parole." *Id.* at 32. This appears to be a claim that Mr. Firth feels pressure from SOTMP officials to confess to fabricated events. Even assuming this is the case, the Fifth Amendment does not protect an individual from feeling pressure to testify against himself. Rather, the Amendment comes to life only after the individual has caved in to the pressure and given answers – at that point, the Amendment entitles the individual to seek to suppress those answers in any future criminal proceeding. *See Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977) ("when a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment and cannot be used against the declarant in a subsequent criminal prosecution").

Arguably, the Fifth Amendment also prevents the Defendants from taking adverse action against Mr. Firth based on his refusal to answer questions in SOTMP. *Id.* ("our cases have established that a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself"). Thus, for example, one might argue that the Defendants cannot terminate Mr. Firth from SOTMP treatment based on his refusal to answer questions he believes might incriminate him. However, when reduced to this level, Mr. Firth's Fifth Amendment claim essentially duplicates the substantive Due Process claim that the Court has already allowed to proceed. In that claim, Mr. Firth alleges that the Defendants terminated his SOTMP participation for arbitrary reasons. One

might expect that the Defendants would contend that the termination was justified because of concerns that Mr. Firth was failing to acknowledge having committed inappropriate acts, and Mr. Firth's logical response would be that he refused to acknowledge any such acts because of Fifth Amendment concerns. Ultimately, the Fifth Amendment inquiry in this context is subsumed within the substantive Due Process inquiry – a decision that is motivated by impermissible retaliation for one's exercise of constitutional rights would, by definition, be arbitrary and capricious. Thus, the Court finds that a Fifth Amendment claim of the type described by Mr. Firth in his response brief is subsumed within the substantive Due Process claim and thus, the standalone Fifth Amendment claim may be dismissed.[12]

### G. Parole statute

Finally, Mr. Firth contends that Colorado's parole statute, C.R.S. § 18-1.3-1006 deprives him of procedural Due Process insofar as the statute does not provide for adequate periodic reassessment of an individual's eligibility for parole. C.R.S. § 18-1.3-1006(1)(c) provides that "if the parole board does not release the sex offender on parole . . . the parole board shall review such denial at least once every three years until it determinates that the sex offender meets the criteria for release." Mr. Firth's claim on this point is not well-developed in the Complaint, and

---

[12]Although the Court does not reach the issue, it finds unpersuasive the Defendants' argument that cases such as *Wirsching v. Colorado*, 360 F.3d 1191, 1201 (10th Cir. 2004), stand for the proposition that the Fifth Amendment is not implicated by SOTMP as a matter of law. *Gwinn v. Awmiller,* 354 F.3d 1211, 1227 n. 9 (10th Cir. 2004), makes clear that "whether requiring a prisoner to admit to an offense in order to be eligible for parole constitutes compulsion in violation of the Fifth Amendment is a question not resolved by the Supreme Court's decision in *McKune* [*v. Lile*, 536 U.S. 24 (2004)] or our decision in *Searcy* [*v. Simmons*, 299 F.3d 1220, 1226 (10th Cir. 2002)]." *Wirsching* relies entirely on *McKune* and *Searcy*, and, in any event, is distinguishable on its facts, as parole eligibility was not considered there.

appears to rely entirely on a single Colorado case, *People v. Kibel*, 701 P.2d 37 (Colo. 1985). In that case, the Colorado Supreme Court found that although inmates were entitled by the procedural Due Process clause to some unspecified procedures that "will lessen the risk of an erroneous deprivation of the individual's liberty or property." *Id.* at 43. The Court concluded that a statutorily-required annual review by the parole board of inmates eligible for release satisfied that Due Process requirement. *Id.* at 44. Nothing in *Kibel* indicates that the Court considered annual review to be the outer limit of the Due Process clause, such that extending the period between parole evaluations would be improper, and Mr. Firth cites to nothing supporting such a proposition. Without some factual basis for contending that evaluation of inmates on a three-year schedule somehow runs afoul of the Due Process clause, the Court finds claim (xi) is insufficiently conclusory and fails to state a claim on which relief could be granted.

For the foregoing reasons, the Defendants' Motion to Dismiss is granted in part and denied in part. Mr. Firth's substantive and procedural Due Process claims that challenge his termination from SOTMP treatment may proceed but all other claims are dismissed.

### H. Objections to Recommendation

As discussed above, Mr. Firth has moved for a preliminary injunction restraining the Defendants from terminating him from SOTMP treatment and from pressuring him to admit to facts that bear on his probation revocation. The Magistrate Judge recommended that the motion be denied, and Mr. Firth filed timely Objections.

Assuming, without necessarily finding, that a recommendation concerning a request for preliminary injunctive relief is dispositive, *see Mitchell v. Century 21 Rustic Realty*, 233 F.Supp.2d 418, 430 (E.D.N.Y. 2002), the Court reviews the recommendation *de novo* as a result

of Mr. Firth's Objections. Fed. R. Civ. P. 72(b).

Mr. Firth does not object to the legal standard applied by the Magistrate Judge concerning what must be shown to obtain an injunction, and this Court agrees that Mr. Firth must show: (i) imminent, irreparable injury; (ii) a likelihood of success on the merits; (iii) a balance of the equities tipping in his favor; and (iv) no undue harm to the public interest.

It appears that Mr. Firth's motion has largely been rendered moot by the recent rulings of the Colorado Court of Appeals and Colorado Supreme Court. As this Court understands, a major justification for Mr. Firth's motion was a request to avoid being compelled to admit to circumstances that, he contended, would compromise his ability to maintain his contentions on appeal that the conduct underlying the revocation of his probation was insufficiently serious. Because both the Court of Appeals and Colorado Supreme Court have upheld the revocation of probation, Mr. Firth has exhausted the appeals available to him of that issue. Thus, to the extent his request for preliminary injunctive relief is predicated on his need to avoid making the statements requested by SOTMP providers, that concern has been rendered moot.

Arguably, Mr. Firth's motion is susceptible to an alternative reading that contends that his termination from SOTMP would constitute an additional denial of his substantive Due Process rights. Mr. Firth contends that SOTMP providers lack any ability to independently construe events and thoughts that Mr. Firth describes to them. As a result, he argues, their decision to terminate his SOTMP participation for failing to properly minimize those events and thoughts would be arbitrary and capricious. Although the threatened deprivation of a constitutional right might suffice to establish the irreparable injury necessary to warrant injunctive relief, *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir.2001), this Court agrees with

the Magistrate Judge that Mr. Firth has failed to show a likelihood of success on the substantive Due Process claim.

Here, there is effectively no factual record from which the Court can assess the particular circumstances underlying Mr. Firth's motion. Mr. Firth has submitted no affidavit describing the particular communications he had with the Defendants concerning the threat to terminate his SOTMP participation. Although his Complaint includes memos from SOTMP officials explaining the reasons why he was terminated from SOTMP participation on previous occasions, the motion for preliminary injunction attaches no such memos from the current threat to terminate his involvement. All the Court has supporting the instant motion is Mr. Firth's vague and conclusory assertions that the Defendants are insisting that he confess to certain things that he claims are untrue. This is simply insufficient to carry his burden of showing that he is likely to succeed on a substantive Due Process challenge to the anticipated decision to terminate his SOTMP involvement.[13]

Accordingly, Mr. Firth's Objections are overruled and the Court adopts the Magistrate Judge's recommendation.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 24)** is **GRANTED IN PART** and **DENIED IN PART**. Mr. Firth's claims alleging that his termination(s) from

---

[13]Even a superficial review of the record here indicates that there is a sharp dispute between Mr. Firth's version of certain events and those of the Defendants. For example, Mr. Firth insists that the incident of the jogger was nothing more than him "driving [past]" the woman, while the Court of Appeals' decision indicates that, presumably, the Defendants' version of the event involves Mr. Firth getting in his car to purposefully follow the jogger. The likely existence of such factual disputes makes is necessary for Mr. Firth to offer more than simple conclusions in support of his motion.

participation in SOTMP treatment violated his substantive and procedural Due Process rights sufficiently state a claim, and those claims will proceed in this action. All other claims in the Complaint fail to adequately state a cause of action and are dismissed. Mr. Firth's Objections (**# 35**) to the Magistrate Judge's recommendation are **OVERRULED**, and Mr. Firth's Motion for Preliminary Injunction (**# 29**) is **DENIED**.

The parties shall immediately contact the Magistrate Judge to arrange a Scheduling Conference in this action.

Dated this 8th day of March, 2010

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge