IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00224-MSK-MJW

SCOTT FIRTH,

      Plaintiff,

v.

JONI SHOEMAKER, individually, and in her official capacity as Deputy Director of Clinical
      Services,
PEGGY HEIL, individually, and in her official capacity as Chief of Rehabilitation Programs,
JOE STOMMEL, individually, and in his official capacity as Chief of Rehabilitation Programs,
BURL MCCULLAR, individually, and in his official capacity as Sex Offender Treatment
      Program Manager,
SAMUEL DUNLAP, individually, and in his official capacity as SOTMP Phase II Program
      Coordinator,
CHRISTINE TYLER, individually, and in her official capacity as SOTMP Therapist,
DWIGHT MARTINEZ, individually, and in his official capacity as SOTMP Therapist,
PAT MOSHURE, individually, and in her official capacity as SOTMP Therapist,
JACULYN MAUS, individually, and in her official capacity as SOTMP Therapist,
LENNY WOODSON, individually, and in his official capacity as SOTMP Therapist, and
TINA VALDEZ, individually, and in her official capacity as SOTMP Therapist,

      Defendants.

---

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

      THIS MATTER comes before the Court pursuant to Mr. Firth's Motion for Summary

Judgment (**# 109**), to which the Defendants responded with a Motion to Strike (**# 111**) that Mr.

Firth opposes (**# 112, 121**); Mr. Firth's "Motion for Special Assignment" (**# 117**), seeking

reassignment of this case to Chief Judge Daniel, to which no response was filed[1]; the

---

[1]Extensive discussion of this motion is not necessary.  The Court finds no good cause
warranting reassignment and the motion is denied.

Defendants' Motion for Summary Judgment (**# 118**), Mr. Firth's response (**# 126**), and the

Defendants' reply (**# 133**); Mr. Firth's Amended Motion for Summary Judgment (**# 131**), the

Defendants' response (**# 136**), and Mr. Firth's reply (**# 142**); Mr. Firth's Motion to Strike (**# 155**)

an allegedly untimely response by the Defendants to a motion that has since been ruled upon[2];

and Mr. Firth's Objections (**# 156**) to the Magistrate Judge's August 3, 2011 Minute Order (**# 153**) denying Mr. Firth's Motion to Introduce Intervention (**# 145**).

## FACTS

The Court has previously addressed the facts of this case in significant detail, and the

recitation contained in the Court's March 8, 2010 Opinion and Order (**# 37**) is deemed

incorporated herein.

In summary, Mr. Firth is an inmate of the Colorado Department of Corrections

("CDOC").  In 2003, Mr. Firth pled guilty to a charge of Sexual Assault on a Child by One in a

Position of Trust, and was sentenced to a term of probation, including intensive sex offender

treatment.  In March 2004, authorities revoked Mr. Firth's probation for violations of the terms

of his sex offender treatment, and Mr. Firth was sentenced to a term of incarceration of 6 years to

life in accordance with C.R.S. § 18-1.3-1002 et seq.

Mr. Firth commenced this action raising numerous constitutional challenges to the

decision to revoke his probation, the sentence he received as a result of that revocation, and the

circumstances of his sex offender treatment within CDOC – more specifically, the Sex Offender

Treatment and Monitoring Program ("SOTMP").  The Court's March 8, 2010 Order deals

extensively with Mr. Firth's various claims, and only two of Mr. Firth's claims survived that

---

[2]Accordingly, the Motion to Strike is denied as moot.

Order: a procedural Due Process challenge and a substantive Due Process challenge to the decision of SOTMP officials to terminate Mr. Firth's participation in the program on two occasions.

After the issuance of that Order, Mr. Firth filed a Notice (**# 41**), informing the Court that it "misunderstood the facts of the case," and explaining that the claim that survived "is not based upon Plaintiff being terminated from treatment," but rather, that he was "arbitrarily denied community placement and parole because he was placed on probationary status while treatment continued."  However, he contends that he was subsequently terminated from the SOTMP, and appears to contend that "the termination from treatment was wrongful" insofar as it violated Mr. Firth's Due Process rights "wherein the criteria used to terminate him from treatment were void for vagueness" and because "Defendants terminated Plaintiff for exercising his . . . right to pursue the writ of habeas corpus."  Mr. Firth proposed that he file a supplemental proceeding to address these claims.

On June 2, 2010, Mr. Firth filed a formal motion to supplement his pleadings (**# 78**), and the Magistrate Judge ultimately granted that motion (**# 108**).  In addition to the existing substantive and procedural Due Process claims arising from Mr. Firth's termination from the SOTMP program, the supplemental pleading adds five new claims: (i) Defendants Tyler, Martinez, Valdez, and Woodson deprived Mr. Firth of substantive Due Process by arbitrarily withholding a recommendation that he be paroled; (ii) Defendants Martinez, Valdez, Tyler, and Woodson deprived Mr. Firth of his constitutional right of access to the courts by coercing him to admit certain facts during therapy or to concede certain legal positions despite Mr. Firth's simultaneous pursuit of an appeal of the revocation of his probation and his pursuit of a habeas

remedy; (iii) a claim that the Lifetime Supervision Criteria used to evaluate Mr. Firth's progress

are void for vagueness in various respects; (iv) Defendants Woodson and Valdez deprived him

of procedural Due Process by suspending him from the SOTMP (in advance of a hearing on

whether he should be terminated from the program) without a pre-suspension hearing; and (v)

that he was deprived of procedural Due Process insofar as the review board considering the

request to terminate his SOTMP participation was not comprised of neutral and detached

individuals.

## ANALYSIS

### A.  Summary judgment motions

1. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment if no

trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary

adjudication is authorized when there is no genuine dispute as to any material fact and a party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what

facts are material and what issues must be determined.  It also specifies the elements that must be

proved for a given claim or defense, sets the standard of proof and identifies the party with the

burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis

Oil Co. v. Producer's Gas Co.,* 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is

"genuine" and summary judgment is precluded if the evidence presented in support of and

opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for

either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a

court views all evidence in the light most favorable to the non-moving party, thereby favoring

the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  See Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and  enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a prima facie claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment.  "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a prima facie case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently."  *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita,*

226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth,* 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another").

The Court first turns to the Defendants' motion for summary judgment, which seeks summary judgment on all of Mr. Firth's original and supplemental claims.

### 1. Termination from SOTMP

The Court first turns to those claims that relate to Mr. Firth's termination from the SOTMP. The Court's prior Order found that Mr. Firth could assert both substantive and procedural Due Process challenges to the decision to terminate him. In addition, several of Mr. Firth's supplemental claims relate to this issue. His second supplemental claim, alleging that the Defendants deprived him of access to the Courts by "coercing" him to admit certain facts for therapeutic purposes, despite his ongoing challenge to his parole revocation and a *habeas* proceeding that denied those facts, is largely duplicative of a claim in his original Complaint that alleged that the Defendants were coercing him to admit such facts in violation of his Fifth Amendment rights. As the Court noted in its prior Order, this argument is subsumed with the substantive Due Process claim that contends that the Defendants' decision to terminate him from the program was arbitrary and without justification. Accordingly, the Court will address both the Fifth Amendment and right of access to the Court claims as part of its substantive Due Process analysis.

### (a) Procedural Due Process

Turning first to procedural Due Process concerns, the parties agree that, by virtue of *Beebe v. Heil*, 333 F.Supp.2d 1011, 1017 (D. Colo. 2004), Mr. Firth has a constitutionally-

protected liberty interest in participation in the SOTMP, such that procedural Due Process is required before that interest can be deprived. Where deprivation of a constitutionally-protected interest is sought, an inmate is entitled to a relatively modest suite of procedural Due Process protections. *Wolff v. McDonnell*, 418 U.S. 539, 559-572 (1974). Specifically, the inmate must be provided: (i) advance written notice of the charges against him; (ii) the ability to present evidence in his defense, including the right to call witnesses unless security reasons prohibit; (iii) the right to a neutral and detached hearing body; and (iv) a written statement of the hearing body's reasons for its decision, supported by some evidence in the record. *Id.*; *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

Turning first to whether Mr. Firth was provided with adequate notice, the Defendants have demonstrated that Mr. Firth was provided with a Notice of Suspension and Right to SOTMP Termination Review form on August 31, 2009, in advance of his hearing on September 3, 2009. Mr. Firth responds that the notice was inadequate, as it did not specifically identify the law, criteria, program standards, or other authority that he was alleged to be in violation of. He contends that "Defendants must state the authority that was violated so that Plaintiff has a chance to clarify what the charges are." *Citing Wolff*, 418 U.S. at 564.

The notice of charges given to Mr. Firth was extensive. It stated "you have demonstrated a lack of progress in treatment, a lack of motivation for treatment, and a failure to meet program expectations," in addition to having "violated the Therapeutic Community Contract." The notice goes on to provide specific factual detail supporting each contention, including includes a full single-spaced page overview of various ways in which he failed to meet certain basic treatment goals, and supplements that overview with three additional pages of single-spaced details. The

notice ended with an indication that this conduct violated provisions of the Therapeutic Community Treatment Contract requiring "respect [of] others" and "sufficient and sustained progress towards meeting my treatment goals."   Mr. Firth's argument is that this final disclosure is insufficient, and the Defendants are required to more specifically identify the "Lifetime Supervision Criteria, SOMB Standards, program expectations, rehabilitative goals, or treatment goals" that apply to his situation.

The Court finds that argument to be without merit.  The level of detail required in the notice of charges is "sufficient factual specificity to permit a reasonable person to understand what conduct is at issue so that he may identify relevant evidence and present a defense."  *Sira v. Morton*, 380 F.3d 57, 70-72 (2d Cir. 2004).  Undoubtedly, the notice given to Mr. Firth supplies ample factual detail to permit him to understand what particular acts were the justification for his termination from the program.  Mr. Firth's demand that the notice correlate the listed facts to specifically-identified treatment standards is essentially a request that the Defendants supply him with a brief detailing <u>how</u> the alleged facts support the requested termination.  Nothing in *Wolff* or other caselaw requires prison officials to provide an extensive and pinpoint specific recitation of the reasoning, as opposed to the facts, behind the notice of misconduct.  The notice adequately explained to Mr. Firth that termination was being sought because of his failure to make progress in treatment and provided him with extensive factual detail from which officials had reached that conclusion.  This was sufficient notice to satisfy the Due Process standard.

The Defendants have come forward with evidence that Mr. Firth was given the opportunity to submit evidence in his own defense and to call witnesses if he so chose (he did not request to do so).  Mr. Firth's only dispute on this point is that he did not have adequate time

to "interview potential witnesses [and] identify[ ] who could be called as a witness."

Nevertheless, the record indicates that Mr. Firth was given three days notice of the hearing, more

than the 24 hours constitutionally required by cases like *Wolff*, and the extensive factual

recitation in the notice gave a clear indication of the particular statements and incidents that Mr.

Firth needed to address.  More importantly, the charges in the notice reflect ongoing issues that

Mr. Firth has had with his treatment providers and fellow inmates, and thus, there was no reason

for Mr. Firth to be confused as to which individuals might have evidence to give at the hearing.

Under these circumstances, the Court cannot say that Mr. Firth was denied the right to present

evidence in his defense.

Next, Mr. Firth challenges the neutrality of the review board hearing the request to

terminate his involvement in the SOTMP.  *Wolff* entitles an inmate facing sanctions to an

"impartial decisionmaker," but "the constitutional standard for impermissible bias is high."

*Perotti v. Marberry*, 355 Fed.Appx. 39, 43 (7th Cir. 2009), *citing Piggie v. Cotton*, 342 F.3d 660,

666 (7th Cir. 2003).  The degree of impartiality required of prison hearing officers does not rise to

that required of, say, a judge in a court of law, and it is permissible for prison hearing officers to

be "encumbered by various conflicts of interest that, in other contexts, would be adjudged of

sufficient magnitude to violate due process."  *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.

1989).  Disqualification is required where the decisionmaker was "directly or substantially

involved in the underlying incident," but not simply because that hearing officer might have

knowledge of or involvement in a previous incident involving the prisoner.  *Perotti*, *id.*

Here, Mr. Firth's contention that the review board was unconstitutionally biased is based

on the fact that the board consisted of "three SOTMP therapists."  These individuals, Mr. Firth

argues, necessarily adhere to stated principles of the SOTMP, including the doctrine that "it is in the nature of the disorder that sex offenders' behaviors are inherently covert, deceptive, and secretive," and that sex offenders have "tendencies to exhibit secretive, manipulative, and denying behaviors." Mr. Firth argues that this predisposes review board members to make findings averse to the inmates who appear before it. Mr. Firth then argues that various statements made by the review board members during the hearing reflect a bias against him.

The Court finds Mr. Firth's arguments to be without merit. The mere fact that the review board is comprised of persons with specific knowledge and experience in treating sex offenders does not necessarily demonstrate bias of constitutional import. In the same sense that prison officials – *i.e.* those familiar with the character and tendencies of prison inmates – can constitutionally preside over inmate disciplinary hearings, this Court sees no reason why SOTMP therapists cannot preside over termination hearings. The fact that these therapists may recognize the fact that sex offenders can be secretive or deceptive does not compel the conclusion that the therapists are inherently biased in hearing termination cases; if anything, the therapists' experience may assist them in recognizing when sex offenders are <u>not</u> being deceptive or secretive when providing testimony at the hearing. The recurring factor in caselaw requiring disqualification of a hearing officer is that officer's participation in or knowledge of the conduct at issue in the hearing, and here, Mr. Firth makes no allegations that the members of his review board knew of or participated in the events that were discussed at the hearing. Moreover, the Court has reviewed the entire transcript of the review board hearing and finds nothing therein that discloses any panel member's bias that would rise to a constitutional level.

Finally, *Wolff* requires that an inmate receive a written statement of the panel's findings

and that such findings comport with "some evidence" in the record.  In applying the "some evidence" standard, the Court does not re-examine the entire record, independently assess the credibility of witnesses, or weight the evidence; it merely looks to see whether there is any evidence in the record – even "meager" evidence – that could support the board's conclusion. *Hill*, 472 U.S. at 457.  Here, the Court finds that Mr. Firth received all of the process due to him. The board issued a two-page, single-spaced determination that sets forth factual findings in extensive detail (including some findings in Mr. Firth's favor), and each of the factual findings is consistent with some evidence in the hearing transcript.  Mr. Firth devotes considerable attention to highlighting his own accomplishments in therapy, and while those accomplishments are substantial and commendable, the record supports the review board's conclusion that Mr. Firth's overall progress and motivation was insufficient in light of several specific instances and actions. Mr. Firth obviously disputes the gloss placed on these instances by his therapists, but the Court agrees with the review board that the therapists' interpretation of these events is plausible and indicative of concerns over Mr. Firth's therapeutic progress.

Accordingly, the Court finds that the Defendants are entitled to summary judgment on Mr. Firth's contention that he was denied procedural Due Process in the decision to terminate him from the SOTMP, as well as on his supplemental claim that the review board was unconstitutionally biased.

### (b) Substantive Due Process

Next, the Court proceeds to consider Mr. Firth's claim that his termination violated substantive Due Process rights.  The Court previously found that Mr. Firth's Complaint alleged a substantive Due Process violation based on his termination from the SOTMP, although the Court

did not closely analyze that claim to attempt to ascertain precisely what aspect of the Defendants' conduct Mr. Firth alleged gave rise to such a claim.  Beyond simply stating that the Defendants' actions were "deliberate[ly] indifferen[t] to his rights" and "in a manner shocking to the contemporary conscience," Mr. Firth's original Complaint did not elaborate on his substantive Due Process claim.  The Court did find, however, one contention by Mr. Firth that was particularly well-suited for substantive Due Process consideration – the contention that the Defendants required Mr. Firth to choose between, on the one hand, fully participating in SOTMP treatment by discussing all of his conduct candidly and truthfully and, on the other hand, his ability to invoke his Fifth Amendment right to refuse to admit to the conduct underlying the revocation of his probation while he was continuing the challenge the revocation decision, first through an appeal and later through a *habeas* proceeding that is still underway.[3]  Having already concluded that the Defendants' decision to terminate Mr. Firth's participation in SOTMP was not arbitrary or capricious in the sense that the decision was supported by evidence received at the review board hearing, the Court will analyze the sufficiency of any substantive Due Process claim in light of Mr. Firth's other constitutional claims.

The substantive Due Process clause ensures that governmental decisions are not arbitrary, capricious, lacking a rational basis, or shocking to the conscience of the Court, regardless of the fairness of the procedures used to implement it.  *Butler v. Rio Rancho Public Sch. Bd. of Educ.*, 341 F.3d 1197, 1200–01 (10th Cir. 2003).  When, as here, an executive (*c.f.* legislative) action is

---

[3]Mr. Firth's supplemental pleading also characterizes this claim as implicating his First Amendment right of access to the courts, based on the SOTMP's requirement that Mr. Firth's peers report to SOTMP therapists about factual representations Mr. Firth was making in his appellate and *habeas* filings.  In this sense, the "right of access" claim is not materially different from the Fifth Amendment claim, and the Court will limit its analysis to the latter.

challenged under the substantive Due Process clause, the Court may apply two different analyses: the "fundamental liberty" test and the "shocks the conscience" test.  *Dias v. City and County of Denver,* 567 F.3d 1169, 1181-82 (10th Cir. 2009).   Under the "fundamental liberty" test, the Court inquires whether the action burdens a fundamental right, and, if so, examines whether that action is narrowly-tailored to serve a compelling governmental interest; if no fundamental right is implicated, the Court examines whether a rational basis supports the action. *Id.* at 1181. Under the "shocks the conscience" test, the Court examines whether the challenged act is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Ellis ex rel. Estate of Ellis v. Ogden City,* 589 F.3d 1099, 1101 (10th Cir. 2009). Whether an action "shocks the conscience" is highly dependent upon the attendant circumstances, and what may be egregious in one context may be acceptable in another.  *Green v. Post*, 574 F.3d 1294, 1301 (10th Cir. 2009).

However, it is necessary to recognize that these analytical modes do not necessarily apply in the prison context.  In *Turner v. Safley*, 482 U.S. 78, 89 (1987), the Supreme Court held that when inmates' constitutional rights – even fundamental ones otherwise warranting strict scrutiny – are implicated by prison policies, the prison policy prevails so long as it is reasonably related to a legitimate penological objective.  Thus, at least as far as the "fundamental liberty" test goes in this case, Mr. Firth's substantive Due Process claim will fail unless he can show that either: (i) the terms of the SOTMP are not reasonably related to a legitimate penological interest, or (ii) the effect that the SOTMP has on his First and Fifth Amendment rights is shocking to the judicial conscience.

Mr. Firth's claim highlights a tension that is not unusual in the judicial system – the

desire of a defendant (and, upon conviction, an appellant or petitioner) to remain silent and to avoid conceding factual or legal issues that could compromise future legal claims is often in conflict with the rehabilitative or therapeutic requirement that an convicted defendant fully admit or "own up to" the conduct at issue a demonstration of his acceptance of responsibility.  Indeed, the Supreme Court has considered a very similar question to that presented here.  In *McKune v. Lile*, 536 U.S. 24, 29-33 (2002), an inmate who refused to participate in sex offender therapy on Fifth Amendment grounds alleged a substantive Due Process claim when he was subjected to penalties, including loss of privileges and transfer to a more restrictive facility.  However, *McKune* failed to reach the question of whether the substantive Due Process clause was violated is such situations because the punishments imposed on the inmate for non-participation in sex offender therapy were found to be insufficiently punitive as to give rise to a liberty interest.  *Id.* at 37-38.  Most notably, the inmate's "decision not to participate in the [treatment program] did not extend his term of incarceration [nor] affect his eligibility for . . . parole." *Id.* at 38.  Here, on the other hand, it is undisputed that Mr. Firth's exclusion from the SOTMP prevents him from being considered eligible for parole, and thus, *McKune* is of little assistance.

More recently, another judge of this Court addressed the precise question presented here. In *Doe v. Heil*, ___ F.Supp.2d ___, 2011 WL 1043573 (D. Colo. Mar. 21, 2011) (slip op.), Judge Daniel addressed a contention by a CDOC inmate that "that his Fifth Amendment right against self-incrimination is violated by CDOC administrative regulations requiring convicted sex offenders to provide a full sexual history . . . in order to participate in and/or be readmitted to the

sex offender treatment program required for parole eligibility."[4]  The court first found that the

inmate had made a sufficient showing that his Fifth Amendment rights were implicated by the

SOTMP's requirements.  Next, relying on *Turner v. Safley*, 482 U.S. 78, 84 (1987), the court

balanced the inmate's constitutional interest against the prison's penological interest in the

contours of the SOTMP.  It found that "it is beyond reasonable dispute that the CDOC has a

legitimate penological interest in having convicted sex offenders complete the treatment program

before being released on parole."  Thus, the court turned to the question of whether the SOTMP

was "reasonably related" to that legitimate penological interest.  After weighing the various

factors that bear on that question, the court concluded that CDOC's SOTMP policies are

reasonably related to legitimate penological interests and thus, prevail over inmates' interests in

invoking Fifth Amendment rights.

This Court finds the analysis in *Doe* to be thorough and persuasive and adopts it in its

entirety.[2]  To the extent that the SOTMP causes tension with an inmate's invocation of his Fifth

---

[4]Although the court's analysis focuses on the claim as being brought under the Fifth
Amendment, the court also considered a substantive Due Process claim raising essentially
identical issues.  In disposing of the substantive Due Process claim, the court distinguished an
inmate's liberty interest in not being summarily discharged from the SOTMP (as recognized in
*Beebe*) from the question of whether an inmate has a similar liberty interest in remaining in the
program without fully complying with its requirements.  Finding no liberty interest existing in
the latter situation, the court found that no substantive Due Process claim was cognizable based
on an inmate's obligation to surrender Fifth Amendment rights in order to fully participate in the
SOTMP.  The court went on to observe that even if a liberty interest was implicated in those
circumstances, the same analysis as that used in the Fifth Amendment claim would apply.

[2]On mostly similar facts (a CDOC inmate temporarily denied parole eligibility for being
on SOTMP suspension), another judge on this court reached a similar outcome, albeit through
different reasoning.  In *Loyd v. Pendergast*, 2009 WL 2514179 (D. Colo. Aug. 14, 2009)
(unpublished), Judge Brimmer adopted an unopposed Recommendation by Magistrate Judge
Tafoya.  Relying on *Carroll v. Simmons*, 89 Fed.Appx. 658, 662 (10th Cir. 2004) (unpublished),
*Loyd* concluded that a denial of parole eligibility for non-compliance with SOTMP requirements

Amendment rights, the therapeutic and rehabilitative goals behind the SOTMP constitute legitimate penological interests that prevail.[3]   The inmate may still choose to invoke his Fifth Amendment rights and fail to complete the SOTMP, but that choice (and the parole-related consequences that flow from it) will not thereafter support a claim for substantive Due Process. Accordingly, the Defendants are entitled to summary judgment on Mr. Firth's substantive Due Process claim in the original Complaint, as well as the claim in the supplemental pleading that the Defendants coerced him into surrendering his Fifth Amendment rights.

2. <u>Suspension from SOTMP</u>

Closely-related to Mr. Firth's procedural Due Process challenge to his termination from the SOTMP is his contention in his supplemental pleading that he was denied procedural Due Process a second (or, temporally, first) time when he was suspended from the program after having been notified that the Defendants were seeking to terminate his participation.

On August 31, 2009, Mr. Firth was given a document entitled "Notice of Suspension and Right to SOTMP Termination Review."   Although that document was primarily designed to give Mr. Firth notice of the Defendants' intention to terminate his participation in SOTMP, it also stated that "you are hereby suspended from any further participation in sex offender treatment until the conclusion of the termination review process.   If the Panel determines that termination

---

did not sufficiently distinguish the case from the Supreme Court's decision in *McKune*, requiring dismissal of any Fifth Amendment-based claim.   Without necessarily finding *Loyd* to be incorrect, this Court finds the reasoning of *Doe* to be more persuasive.

[3]For this same reason, the Court finds that the SOTMP's requirement that inmates admit certain facts that might implicate the inmate's Fifth Amendment interests reflects a difficult resolution of two important-yet-competing interests and, as such, does not shock the judicial conscience.

is not warranted, you will be placed back in the treatment program."  Mr. Firth contends –

correctly – that this provision suspension was not accompanied by the types of procedural

protections required by *Wolff*.  However, *Wolff*'s procedures are only required when an inmate is

being deprived of a constitutionally-protected liberty interest.  Thus, the question presented is

whether the provisional suspension of an inmate from SOTMP participation, pending a

termination hearing, itself implicates any constitutionally-protected interests.

Because the parties agree that the liberty interest in not being terminated from SOTMP

arises via *Beebe*, that is an appropriate place to look to define the precise contours of that liberty

interest.  As *Beebe* explains, the degree to which a deprivation of an inmate's liberty interest

gives rise to Due Process protections depends upon whether and to what extent the deprivation

causes the inmate to suffer a restraint that is an "atypical and significant hardship on the inmate

in relation to the ordinary incidents of prison life."   333 F.Supp.2d at 1016.  That inquiry

requires consideration of the conditions of confinement, including the duration and degree of the

restriction as compared with other inmates.  *Id.* at 1017.  Termination from the SOTMP rose to

the "atypical and significant hardship" level because termination from that program "would work

a major change in the condition of plaintiff's confinement, since his status would change from

'eligible to be considered for parole' to 'ineligible to be considered for parole'."  333 F.Supp.2d

at 1016-17.

That some conclusion is not necessarily warranted for pre-termination suspensions from

participation in the program.  First, and perhaps most significantly, Mr. Firth has not come

forward with evidence that indicates that suspension from the SOTMP pending a termination

review carries with it the same ineligibility for parole consideration that outright termination

does.  Ineligibility for parole was essential to *Beebe*'s reasoning that termination from the

SOTMP worked an atypical and significant hardship on inmates, and thus, if a temporary

suspension from SOTMP pending termination review does not carry that same automatic

revocation of parole eligibility, the analysis in *Beebe* would not apply.

Even if suspension effective barred parole eligibility, the Court also observes that it does

so only for a brief period of time.  The record reflects that Mr. Firth was under suspension from,

at best, August 31 to September 15, 2009, the date the review board issued its determination.  As

*Beebe* notes, "the duration and degree" of the restraint on liberty bears on the question of

whether Due Process protections arise.  The record here does not indicate that Mr. Firth suffered

a lengthy suspension for no apparent reason; by all appearances, CDOC and the review board

proceeded expeditiously, considering two days of testimony and supporting exhibits and writing

a decision containing specific factual findings and conclusions, all within the span of 15 days.

Under these circumstances, the Court cannot say that the restraints on Mr. Firth during the period

of suspension were such atypical and substantial hardships that he was entitled to procedural Due

Process protection before being suspended.  Accordingly, the Defendants are entitled to

judgment on this claim.

3. <u>Vagueness</u>

Mr. Firth's supplemental pleading contends that the various criteria used in the SOTMP

are void for vagueness.  This claim appears to arise in the context of his termination hearing, as

he explains that his therapeutic contract acknowledges that he can be terminated from treatment

"based upon the consensus of the treatment staff that I have failed to make sufficient and

sustained progress towards meeting my treatment goals," but he states that "at the [termination]

hearing, Defendants . . . did not express whether there were any [treatment goals], what they were, or with which explicit goal [I] failed to make sufficient and sustained progress [towards]." The claim goes on the detail many specific instances in which Mr. Firth contends that statements made by therapists at the hearing and/or findings made by the review board in its disposition are not precisely correlated to specific articulations of therapeutic criteria.

At the outset, the Court notes that many of Mr. Firth's allegations are not strictly a contention that a particular term or phrase used in SOTMP is vague.  Indeed, the record reflects that Mr. Firth understands and recognizes the general meanings of various words, phrases, and concepts – "minimizing," "cycles," "high-risk," etc. – as they are used in the SOTMP.  Rather, the allegations in this claim consist of Mr. Firth disagreeing with the findings and conclusions of his therapists or the review board regarding how to best characterize particular instances of conduct – *e.g.* whether a particular incident Mr. Firth describes is a "daydream" or "fantasy" (the therapists' term) or a "flash though" (Mr. Firth's term), each of which has its own particular consequences; whether, in calling a fellow inmate "Mr. Sniper" during a therapy session, Mr. Firth was being disrespectful (the therapists' version) or whether he was "appropriately confront[ing] others in group treatment" for having engaged in "passive-aggressive avoidance behavior [that was] not appropriate" (Mr. Firth's version).  In this sense, Mr. Firth's claim is not so much that the terms used are impermissibly vague, but rather simply that he objects to the fact that the therapists and review board members do not view the same event the way he does.[4]

To the extent any of Mr. Firth's claim can truly be described as a a vagueness challenge,

_____

[4]In this respect, a finding by the review board that Mr. Firth would comply with treatment requirements to disclose his thoughts, but that he thereafter "became embroiled in unproductive resistance as to their meaning and definition," is particularly astute.

the Court reincorporates its prior analysis of Mr. Firth's initial vagueness challenge.

Specifically:

> a law is impermissibly vague only when it "fails to provide such minimal guidelines" that it allows enforcers to "pursue their personal predilections" without any constraints. *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). A vague law is one in which the enforcement is "completely subjective" and enforceable "at the whim of any officer." *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 521 (8th Cir. 1999) (finding regulation requiring boats to go slowly through a "no-wake" zone was not unduly vague) . . . . Although offenders and therapists might sometimes disagree as to whether the offender is indeed minimizing a sexual thought or action, that disagreement is simply the inevitable consequence of the intangibility of an inmate's thoughts or actions. *See e.g. Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) ("because we are "condemned to the use of words, we can never expect mathematical certainty from our language").

*Docket* # 37 at 22-23. Having reviewed the entirety of Mr. Firth's vagueness claim in his supplemental pleading, the Court cannot say that any of the contentions therein rise to the level of demonstrating a policy or regulation that is so vague as to warrant relief. Thus, the Defendants are entitled to summary judgment on Mr. Firth's vagueness challenge.

### 4. Parole recommendation

Mr. Firth's final remaining claim is that the Defendants deprived him of substantive Due Process by arbitrarily withholding a recommendation that he be paroled. In some senses, this claim overlaps with ones that the Court has already addressed. For example, the supplemental pleading explains that the Defendants' refusal to recommend parole was arbitrary because vagueness in therapeutic standards and criteria made is such that he "[did not] know what he must do [to make progress in treatment] and this must be measurable" or that their decision was based on a therapeutic policy that "requires Plaintiff to confess to a violation of probation" – *i.e.*

the Fifth Amendment claim.

To the extent that some component of this claim has not already been addressed, the Court merely notes that a Due Process claim arises only when a person has been deprived of an interest that is constitutionally-protected.  It is well-settled that, in the absence of some state-created entitlement thereto, inmates are not constitutionally entitled to release on parole. *Greenholtz v. Inmates of Nebraska*, 442 U.S. 1, 7 (1979).  Parole decisions often are based on "purely subjective appraisals by [Parole Board] members based upon their experience[;] there is not set of facts which, if shown, mandate a decision favorable to the individual." *Id.* at 9-10. Logically, if there is no constitutional obligation for the state to grant parole, there can be no obligation for the Defendants to recommend it be granted.

Arguably, there may be circumstances in which state laws and rules create a situation by which the Defendants might have a non-discretionary obligation to recommend parole if certain objective criteria are met, but here, Mr. Firth points to none.  Indeed, he cites to C.R.S. § 18-1.3-1006(1)(a) that provides that parole recommendations for sex offenders "shall be based on the criteria established by the [Sex Offender Management Board] pursuant to [C.R.S. § 18-1.3-1009]," and it is apparent that the criteria adopted pursuant to that requirement call for extensive subjective assessments to be made.  Because the parole recommendation process turns on subjective determinations by SOTMP therapists, the Court cannot say that Mr. Firth has shown that he had an entitlement to a favorable recommendation, and thus, he cannot allege a substantive Due Process claim premised upon his failure to receive such a recommendation.

Accordingly, the Defendants are entitled to summary judgment on each of Mr. Firth's claims.   By extension, then, Mr. Firth's own motions for summary judgment are necessarily

denied.  Further, Mr. Firth's remaining motions and objections are denied as moot, as none of the issues raised therein affect the Court's analysis herein.

<u>**CONCLUSION**</u>

For the foregoing reasons, Mr. Firth's Motion for Summary Judgment **(# 109),** Amended Motion for Summary Judgment **(# 131)**,"Motion for Special Assignment" **(# 117)** are **DENIED**. The Defendants' Motion for Summary Judgment **(# 118)** is **GRANTED** as to all claims, and the Clerk of the Court shall enter judgment in favor of the Defendants on all claims in this action. Mr. Firth's Motion to Strike **(# 155)** and Mr. Firth's Objections **(# 156)** are **DENIED AS MOOT**.

Dated this 29th day of September, 2011

**BY THE COURT:**

_____
Marcia S. Krieger
United States District Judge

22